# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAY REVELS,                          )
                                     )
                 Petitioner,         )
                                     )
        v.                           )        No. 4:12CV1903 JMB
                                     )
JEFF NORMAN,                         )
                                     )
                 Respondent,         )

## MEMORANDUM AND ORDER

Jay Revels, a prisoner at the Jefferson City Correctional Center, petitions the Court[1] for a writ of habeas corpus under 28 U.S.C. § 2254. After carefully reviewing the petition and the record, the Court concludes that Revels is not entitled to relief.

## Background

The Missouri Court of Appeals recited the facts of this case as follows:

On the morning of July 2, 2003, Louis Wachowe (Wachowe) went to his place of employment at the Walgreen's on Chippewa and Kingshighway in the City of St. Louis. He arrived at Walgreen's parking lot at around 7:15 a.m. The store manager was not yet there, and Wachowe did not have a key to the store, which was locked. Wachowe sat in his vehicle, a 2002 Nissan Maxima, with the window rolled down eating his breakfast while he waited for the manager to arrive. As he waited, [Revels] approached Wachowe's vehicle and asked him for five dollars. Wachowe told [Revels] that he only had enough money for his own lunch. [Revels] responded, "You have this nice car, you can't give me five dollars." Wachowe tried to roll the window up, but [Revels] stuck a stick in the window and said, "Hold on, hold on." [Revels] then pulled out a gun and told Wachowe to move over. Wachowe told [Revels] that he could have the vehicle, but [Revels] responded, "You ain't going nowhere."

Wachowe moved over to the passenger's seat, and [Revels] got in the driver's seat. [Revels] said, "This a nice car, Mr. Walgreen." [Revels] also threatened to kill Wachowe if he looked at him. [Revels] drove off the parking lot and onto

---

[1] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Chippewa. As the car approached Morganford and Chippewa, [Revels] told Wachowe to pull his pants down. When Wachowe asked what for, [Revels] replied, "Pull your fucking pants down or I'm going to kill you." Wachowe jumped out of the vehicle and ran. Wachowe's vehicle was recovered a few days after it was stolen. A man named Shelby Polk (Polk) was driving the vehicle when it was recovered. The police placed Polk in a lineup, but Wachowe did not identify Polk as the man who had stolen his vehicle.

On August 9, 2003, Norman Sykes (Sykes) and Maurice Wilson (Wilson) pulled into a Vickers' gas station on Broadway in St. Louis. Sykes was driving a black Jeep Cherokee. [Revels] and Cedric Robinson (Robinson) were already at the gas station. Sykes and Wilson were acquainted with Robinson, but did not know [Revels]. As Sykes paid for his gas, [Revels] asked Sykes and Wilson for a bag of marijuana. They agreed to sell [Revels] the marijuana. Sykes asked [Revels] to get in the Jeep so they could conduct the transaction without being seen. [Revels] got into the Jeep with Sykes and Wilson. [Revels] then put a .357 handgun to Sykes's head, and told him to drive off. [Revels] directed Sykes to drive to a nearby cemetery and told him to pull over.

As the Jeep came to a stop, Wilson turned around and punched [Revels]. All three men began struggling in the back of the Jeep and four gunshots were fired. One of the bullets hit Sykes, one hit the backseat, and the other two struck Wilson. Sykes rolled out the driver's side back door. [Revels] also got out of the Jeep, pointed a gun at Sykes and ordered him to take his pants off. As Sykes removed his pants, he saw blood on his shirt and realized that he had been shot. Sykes gave the pants to [Revels] and ran to get help. As Sykes ran from the scene, he heard [Revels] tell Wilson to get out of the Jeep. Wilson told [Revels] he could not move, so [Revels] pulled him out and took Wilson's pants off. [Revels] then got into the Jeep and drove away.

A day or two after the shootings, Sykes saw a television report about a high-speed chase and an arrest. Sykes recognized the man arrested as [Revels], and he reported that to the police. Sykes and Wilson both viewed a photo spread and identified [Revels]. Sykes also identified [Revels] from a physical lineup.

After [Revels] was arrested following the August 9, 2003 incident, police officers discussing that case and the July 2, 2003 incident thought because the assailant's modus operandi of asking the victim to remove his pants was unusual, the assailant in both incidents could be the same person. Wachowe then identified [Revels] as the person who robbed him from both a photo spread and a physical lineup.

Resp't Ex. F at 3-5 (Per Curiam Mem. and Order Supplementing Order Affirming J. Pursuant to

Rule 30.25(b)).

The State charged Revels in a twenty-eight count indictment that included charges of first-degree assault, first-degree robbery, kidnapping, armed criminal action, resisting arrest, and several relatively less serious crimes. *Id.* at 1-2. Revels pled guilty to two counts of resisting arrest, two counts of stealing, one count of unlawful use of a weapon, and five counts of receiving stolen property. *Id.*

Revels opted for a jury trial on sixteen charges (the more serious felony charges). The charges tried included two counts of first-degree assault, eight counts of armed criminal action, three counts of first-degree robbery, and three counts of kidnapping. Resp't Ex. C at 12-20. Counts 1 through 12 related to the events on August 9, 2003, with victims Wilson and Sykes. Counts 13 through 16 related to the events on July 2, 2003, with victim Wachowe.

At trial, the prosecution presented evidence and testimony from numerous witnesses, including victims Wachowe and Sykes. Shortly before the trial began, Cedric Robinson agreed to plead guilty and cooperate with the prosecution, in exchange for a reduced sentence. Resp't Ex. A at 373-460. During his testimony, Robinson repudiated prior written statements signed by him which indicated Revels was not involved in the August 9, 2003, robbery. *Id.* at 396-401.[2] Robinson testified, in substance, that Revels had prepared these exculpatory statements for Robinson. *Id.* Robinson further testified that Revels advised him to "stick to the script," and that such an approach would result in freeing both men. *Id.* at 401-02.

Victims Wachowe, Sykes, and Wilson each testified for the State. Victim Wachowe identified Revels as the person who robbed him, and the jury viewed security surveillance footage of the initial encounter between Wachowe and Revels on the Walgreens parking lot. *Id.*

---

[2] Robinson testified that, for at least one of these statements, he signed a piece of paper and someone else completed the statement. *Id.* at 436-42. The State and defense also stipulated to numerous facts associated with expert handwriting analysis conducted on the written statements. *See* Resp't Ex. B at 4-6.

at 237, 241-42.  Victim Sykes identified Revels as the person who robbed him, and testified that Revels "pulled a .357 and put it to [Sykes'] head and told [Sykes] to drive off."  *Id.* at 272, 284.  Victim Wilson identified Revels as the person who shot him and described the gun as a .357.  *Id.* at 355-56, 366.

The jury convicted Revels on Counts 1 through 7, and 13 through 16.  The jury acquitted Revels on Counts 9 through 13, which alleged kidnappings of victims Wilson and Sykes, and associated armed criminal action allegations.  The court sentenced Revels as a persistent offender to a total of thirty years' imprisonment.  Resp't Ex. F at 1-2.

On direct appeal, Revels contended that the trial court erred in denying his motion for judgment of acquittal at the end of all evidence because there was insufficient evidence to support the robbery and armed criminal action counts for stealing Norman Sykes' pants.  *Id.*  He further argued that the trial court erred in overruling his objections to the prosecutor's questions of Officer Kevin Ahlbrand regarding stolen cars.  *Id.*

Revels also argued that "the State overreached by 'piling on' multiple charges."  *Id.* at 7.  The court found the argument to be without merit because prosecutors enjoy broad discretion as to what charges they file.  *Id.* at 7-8.

The court found that Sykes' testimony and his statement to a police officer were sufficient for a rational juror to convict Revels of robbery and armed criminal action.  *Id.* at 6-7.

The court also rejected Revels' argument that the trial court erred when it overruled his objections to the prosecutor's questions of Officer Kevin Ahlbrand regarding stolen cars.  Ahlbrand testified on re-direct, over Revels' objections, that often the person caught driving a stolen vehicle is not the same person who stole the vehicle.  *Id.* at 9.  As to why, he stated, "Typically stolen vehicles, either stolen off the street or taken in robberies, are sold several times

for a small amount of money on the street to several different people." *Id.* Defense counsel objected on the ground that the testimony called for speculation. *Id.*

The court reviewed the claim for abuse of discretion. It found that the statement was not improper testimony from a layperson, but that the question was "intended to elicit his observations from twenty-one years of law enforcement experience as to why a car stolen by one person would be recovered in the possession of another person." *Id.* at 10. The court affirmed the judgment. *Id.* at 11.

Revels filed a timely *pro se* Rule 29.15 motion, which raised six grounds for relief. Resp't Ex. G at 4, 7-8 (Legal File).[3] Appointed counsel filed an amended motion, *id.* at 18-25, which superseded the *pro se* motion, *see Norville v. State*, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002). In the amended motion, Revels raised two grounds of ineffective assistance of counsel. Revels argued that trial counsel was ineffective for failing to file a motion to suppress the physical line-up, and for failing to file a pretrial motion to sever the charges of the two incidents (July 2, 2003, and August 9, 2003 incidents). Resp't Ex. G at 20, 22. The motion court denied relief without an evidentiary hearing. *Id.* at 26-31.

Revels appealed the denial of his Rule 29.15 motion, and the Missouri Court of Appeals affirmed. Resp't Ex. J at 2 (Per Curiam Mem. and Order Supplementing Order Affirming J.

---

[3] Revels raised four claims of ineffective assistance of counsel. Claim One alleged that his trial counsel was ineffective in failing to raise issues of severance and improper joinder. Claim Two alleged that trial counsel was ineffective in connection with the admission into evidence of a .357 caliber revolver. Claim Three alleged that counsel was ineffective in failing to sufficiently cross-examine Cedric Robinson regarding the .357 caliber revolver. Claim Four alleged ineffective assistance of counsel regarding Police Officer Ahlbrand's testimony on re-direct examination. Revels also raised two due process claims. In Claim Five, Revels argued that he was denied his due process rights when the trial court denied counsel's motions for judgment of acquittal on Counts 7 and 8 (contending that the evidence was insufficient to support a conviction relative to the Norman Sykes incident). In Claim Six, Revels argued that he was denied his due process rights when he was placed in a biased photo lineup. Resp't Ex. G at 7-8.

Pursuant to Rule 84.16(b)).  The appellate court found that trial counsel was not ineffective for failing to file a meritless motion to suppress.  *Id.*  And it found that joinder of the charges was proper under Missouri law.  *Id.* at 6-8.

## Grounds for Relief

In his petition under 28 U.S.C. § 2254, Revels raised four grounds with relief, some of which included numerous subparts.  Revels' grounds are summarized as follows –

1.  *Ineffective Assistance of Counsel Claims*

    (a)    Trial counsel was ineffective for failing to raise a "Drug Deal Gone Bad" defense, failing to raise a mistaken identity defense, and failing to contact his alibi witnesses.

    (b)    Trial counsel was ineffective for failing to file a motion to suppress the identification of him in the line-up because the other participants in the line-up did not resemble him.

    (c)    Trial counsel was ineffective for failing to file a motion to sever counts.

    (d)    Trial counsel was ineffective for failing to call as a witness Shelby Polk, who was arrested while in Wachowe's car.

    (e)    Trial counsel was ineffective for failing to depose any witnesses.

    (f)    Trial counsel was ineffective for failing to move for a continuance when co-defendant Cedric Robinson was announced as a surprise witness.

    (g)    Trial counsel was ineffective for failing to file a motion to dismiss improperly joined counts.

    (h)    Trial counsel was ineffective for failing to object when Cedric Robinson testified that the same gun was used in both assaults.

    (i)    Appellate counsel was ineffective for failing to raise the claims he instructed her to raise.

    (j)    Post-conviction counsel was ineffective for failing to raise, in the amended motion for post-conviction relief, all of all of the claims he raised in his pro se motion.

2. *Prosecutorial Misconduct*

    (a)    The prosecution did not announce that it was going to call Cedric Robinson at trial.

    (b)    The prosecution knowingly introduced Robinson's perjured testimony about the gun.

    (c)    The prosecution relied on an unreliable identification procedure.

    (d)    The prosecution "engaged in multiplicity/duplicity when it stacked several charges against [him]."

    (e)    The prosecution allowed Officer Ahlbrand to give his opinion regarding whether the person caught driving a stolen car is necessarily the same person who stole it.

    (f)    The prosecution presented contradictory theories.

    (g)    The prosecution did not introduce sufficient evidence to support the verdict.

3.    The lack of ballistic evidence demonstrates actual innocence.

4.    The trial court sentenced Revels vindictively.

## Applicable Legal Principles

## I.    Procedural Default

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and

prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

## II.    Merits Standard

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act ("AEDPA") to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or … decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

## III.       Ineffective Assistance of Counsel

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111 (2009). First, a petitioner must overcome the high bar of *Strickland v. Washington*, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." *Id.* at 688, 694.[4] Second, in order to prevail, under 28 U.S.C. § 2254 the petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "This is different from asking whether defense counsel's performance fell below the *Strickland* standard." *Id.* at 101. Both the *Strickland* standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. Finally, claims must be addressed individually – errors that are not unconstitutional individually cannot be accumulated to create a constitutional violation. *See Cole v. Roper*, 623 F.3d 1183 (2010); *United States v. Stewart*, 20 F.3d 911, 917-18 (8th Cir. 1994).

### Discussion

## I.       Ineffective Assistance of Counsel Claims

### A.       Ground 1(a)

In Ground 1(a), Revels argues that trial counsel was ineffective for (i) failing to raise a "Drug Deal Gone Bad" defense, (ii) failing to raise a mistaken identity defense, and (iii) failing

---

[4] A habeas petitioner must prevail on both prongs of the *Strickland* standard. *See Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim."). Therefore, if a petitioner cannot show prejudice, there is no requirement to consider the adequacy of counsel's performance.

to contact his alleged alibi witnesses. Respondent contends that this ground is both procedurally defaulted and meritless. Respondent is correct.

Revels did not raise this claim in his *pro se* Rule 29.15 motion post-conviction relief, and it was not raised in the amended Rule 29.15 motion or on appeal. Revels argues that this ground should not be barred because post-conviction counsel was ineffective under *Martinez* which, if shown, would excuse the default.

Respondent answers that there is no "Drug Deal Gone Bad" defense and that Revels' mistaken identity and alibi claims are conclusory. Respondent is correct.

The Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. 1309, 1320 (2012). This rule does not apply to "appeals from initial-review collateral proceedings." *Id.* Therefore, the default may be excused if any of the eliminated grounds of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318.

Revels cannot avoid the procedural bar because his claims in Ground 1(a) are not "substantial" under *Martinez*. That is, they have no merit.

First, Revels has not identified, and the Court is unaware of, a "Drug Deal Gone Bad" defense. Even if such a defense exists, Revels has not explained how an alleged failure to defend his case on the basis of drug dealing resulted in meaningful prejudice. Finally, the record shows that counsel did, in fact, attempt to introduce a "Drug Deal Gone Bad defense and the court

refused to let her pursue it.  *See* Resp't Ex. A at 362-63.[5]  In fact, the outcome of the case suggests that the jury considered aspects of a "Drug Deal Gone Bad" defense – Revels was acquitted on the charges of kidnapping and armed criminal action relative to victims Wilson and Sykes (Counts 9-12).

Second, as Respondent correctly points out, trial counsel did, in fact, challenge the witnesses' identifications at trial.  Thus, Revels has not shown trial counsel's performance was deficient, let alone any prejudice flowing from such performance (as it relates to witness identifications).[6]

Third, as far as Revels' alibi witnesses are concerned, he submits two sparse affidavits from relatives – Brenda Revels and Ramona Revels.  Both of these affidavits were prepared years after the events in question.  (ECF No. 9)  As noted above, even Revels did not raise this issue in his *pro se* Rule 29.15 motion, and there is no indication that his 29.15 motion counsel had access to the information in these affidavits.  More importantly, the record before the trial court tends to undermine Revels' claims.  Near the end of his sentencing hearing, the court inquired into the adequacy of trial counsel's representation.  Resp't Ex. B at 165-75.  During that inquiry, Revels stated that his attorney failed to speak with three witnesses he requested – Angela Ursery, Steven Williams, and Ebony Williams.  *Id.* at 180.

To establish *Strickland* prejudice from counsel's alleged failure to investigate a potential witness, "petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial."  *Hadley v. Groose*, 97 F.3d 1131, 1135

---

[5] During defense counsel's cross-examination of prosecution witness Maurice Wilson, the prosecutor objected.  During the resulting side bar, defense counsel explained to the court that she was trying to show "this was a drug deal gone bad, who was robbing who."  *Id.*  The court shut down this line of cross-examination.

[6]  The Court addresses other identification issues relative to Revels' claims 1b and 2c below.

(8th Cir. 1994) (internal quotations omitted). There was no mention of Brenda or Ramona Revels before the trial court, and Revels does not offer any affidavits from any other allegedly helpful witnesses. Revels offers only speculation that these other witnesses were available and would have offered beneficial testimony. Further, giving Revels the benefit of the doubt, given the strength of the other evidence against him, there is no reasonable likelihood that the outcome of his trial would have been different had trial counsel contacted these witnesses.

Accordingly, Revels has not overcome the procedural default of Ground 1(a). Ground 1(a) is denied.

## B.     Ground 1(b)

In Ground 1(b), Revels argues that trial counsel was ineffective for failing to file a motion to suppress the line-up identification because there were only three other participants in the line-up and they did not resemble him.[7] Respondent contends that the line-up was not unduly suggestive and that Revels cannot show *Strickland* prejudice. Resp't Br. at 23.

Revels raised a version of Ground 1(b) in his amended Rule 29.15 motion. Resp't Ex. G at 20. The Missouri Court of Appeals denied relief on this claim because Revels did not allege any facts that would have entitled him to relief: "Movant advances no facts that support his allegation that the identifications procedures were unnecessarily suggestive." Resp't Ex. J at 6.

"[T]he Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both

_____

[7] Revels also argues that he had a right to the assistance of counsel at the physical line-up. (ECF No. 1-1 at 2) This argument is based on a flawed premise. The right to counsel during an identification proceeding only attaches after adversarial proceedings have begun. *See United States v. Wade*, 388 U.S. 218, 228-29, 233 (1967). There is no contention that the identification procedures at issue occurred after Revels had been formally charged or adversarial proceedings had otherwise begun.

suggestive and unnecessary. Even when the police use such a procedure … suppression of the resulting identification is not the inevitable consequence." *Id.* (citations omitted).

Revels has not cited any Supreme Court cases requiring that an alleged perpetrator be placed in a line-up comprised of similar looking persons. There is no indication that "improper police conduct created a substantial likelihood of misidentification." *Id.* (quotations and citations omitted).

Additionally, Revels has not demonstrated prejudice from any alleged misidentification. For example, Sykes testified that he first recognized Revels from a newscast of the chase leading to his arrest. Resp't Ex. A at 314 (Trial Tr.).[8] Wachowe was first shown a line-up that did not include Revels, and Wachowe rejected all of the subjects. *Id.* at 233. Wachowe later identified Revels in a photospread. *Id.* at 234. After identifying Revels from the photospread, Wachowe then identified Revels in a line-up. *See also* Resp't Ex. B at 18-20.[9] As a result, there is no indication that any line-up was unduly suggestive or otherwise unconstitutional. Therefore, trial counsel did not provide constitutionally ineffective assistance in declining to mount a pretrial challenge to the line-up procedures used in Revels' case.

The state court's opinion was not contrary to, or an unreasonable application of, clearly established federal law. Rather, the state court's decision denying relief reflects a "reasonable

---

[8] *Cf. United States v. Omar*, 786 F.3d 1104, 1109-10 (8th Cir. 2015) ("Even if it could be said that the identification technique used here was unduly suggestive, [the Eighth Circuit has] reasoned that 'when someone already familiar with a suspect is asked to comment on whether a recorded voice or image portrays the suspect … concerns [about the prejudicial effect of undue suggestiveness] are absent.'") (quoting *United States v. Dobbs*, 449 F.3d 904, 909-10 (8th Cir. 2006)).

[9] The photospread was created using an automated system that selects photographs of persons with similar characteristics. The photospread included six different individuals. *See* Resp't Ex. B at 19. Thus, it is highly unlikely that counsel could have successfully challenged the identification procedures used in this matter.

argument that [Revels'] counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105. Therefore, Revels is not entitled to relief on Ground 1(b).

### C.    Ground 1(c)

In Ground 1(c), Revels argues that trial counsel was ineffective for failing to file a motion to sever counts. Specifically, Revels maintains that the charges from the incident on July 2, 2003, should have been tried separately from the charges arising from the incident on August 9, 2003. Respondent contends that any such motion would have been meritless and that it reflects an issue of state law that is not cognizable in federal habeas review.

As an initial matter, the record is abundantly clear that, had trial counsel moved to sever the counts, the trial court would have denied such a motion. After sentencing Revels, the trial court inquired as to Revels' satisfaction with counsel's representation. Resp't Ex. B at 165-75. One of Revels' complaints was that he did not want a single trial for both the July 2, 2003, and the August 9, 2003 incidents. *Id.* at 172. In response, the trial court stated that "if [counsel] had requested that I sever those charges, I would have denied her request under Missouri law." *Id.*

Revels raised a version of this claim in his amended Rule 29.15 motion. In particular, Revels claimed that trial counsel was ineffective for failing to seek separate trials for the July 2, 2003, events, and the August 9, 2003 events. Resp't Ex. G at 22. The Missouri Court of Appeals rejected this argument, concluding that, under Missouri law, the crimes associated with both incidents were properly joined and Revels had failed to show any prejudice associated with counsel's failure to seek severance. Resp't Ex. J at 6-9.

Missouri Supreme Court Rule 23.05 provides:

> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

"In order to be considered of the same or similar character, the crimes committed must be so similar that it is likely the same person committed the charged offenses." Resp't Ex. J at 6.

In denying relief on this claim, the Missouri Court of Appeals applied Missouri law and found the two incidents to be similar in character.

> In the instant case, both robberies occurred within the City of St. Louis and within approximately five weeks of each other. Both robberies involved an African-American male perpetrator deceptively engaging male victims, before entering the victims' automobile with the victim(s) still inside. Significantly, both robberies involved the unique demand by the perpetrator that his victims remove their pants. These common facts sufficiently demonstrate that the Walgreens robbery and the gas station robbery were similar in character.

*Id.* at 7.

"In § 2254 proceedings, federal courts are limited to deciding whether a state conviction violated the federal Constitution or laws…. A federal court may not re-examine a state court's interpretation and application of state law." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (citation omitted). *See also Middleton v. Roper*, 498 F.3d 812, 820 (8th Cir. 2007) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). The state court's decision was entirely grounded in state law, and this Court must defer to that decision. Missouri's law is not in conflict with any federal constitutional principles.

The record conclusively shows that, had counsel moved to sever the trials, such a motion would have been unsuccessful. Therefore, Revels cannot now show that counsel was deficient for failing to file a meritless motion. Accordingly, Revels cannot demonstrate that he was prejudiced by counsel's performance in this regard. As a result, Revels is not entitled to relief on Ground 1(c).

### D.    Ground 1(d)

In Ground 1(d), Revels argues that trial counsel was ineffective for failing to call as a witness Shelby Polk ("Polk"), who was arrested while in Wachowe's car after it had been stolen.

Respondent argues that this ground is procedurally defaulted. Revels did not raise it in his Rule 29.15 motion, and he has not offered any basis to excuse his default. Respondent also contends that Revels has failed to show that he was prejudiced by the failure to call Polk as a witness. As a result, Revels is not entitled to relief on this ground.

The Court concludes that Revels has defaulted this ground. It was not raised in his *pro se* or amended Rule 29.15 motions, and Revels has not identified any cause and prejudice that would excuse his default. In any event, this claim also fails on the merits.

"Some days" after the theft of Wachowe's car, officers arrested Polk while he was driving Wachowe's car. Resp't Ex. B at 16. Polk was placed in a line-up at the St. Louis County Justice Center with persons sharing similar physical characteristics. As noted above, Wachowe was asked if he could identify any of the persons in the line-up and he could not. *Id.* at 17. *Id.* After Wachowe was unable to identify anyone in the line-up, the police did not have any leads in the case. *Id.* at 18.

Revels contends that Polk was found "with a gun that closely resembled the one described by robbery victim, but Counsel Thomas again remained not to abide by Movant's wishes claiming she didn't want to upset the Court and wind up with an all white jury from Ladue. This was wrong and a reasonable minded counsel wouldn't have taken such a stance, therefore Movant is entitled to a new trial." Mem. in Supp. of Pet. at 2. Nothing in the record, however, suggests that Polk was the person that stole Wachowe's car, other than the fact that he was driving it when it was recovered. The record demonstrates that Wachowe did not identify Polk as the robber during the line-up procedures.

As noted above, to establish *Strickland* prejudice from counsel's alleged failure to investigate a potential witness, "petitioner must show that the witness would have testified and

that their testimony would have probably changed the outcome of the trial." *Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1994) (internal quotations omitted). Revels has not met this burden. There is no indication that Polk would have testified, and if so, what his testimony might have been.[10] Revels offers only speculation that Polk's testimony would have been beneficial. That is not enough to overcome the deferential standard of *Strickland*. Similarly, Revels cannot show that the outcome of the trial would have been different had counsel called Polk to the stand. Regardless of Polk's presence in Wachowe's vehicle <u>after it had been stolen</u>, there was more than sufficient evidence to convict Revels of the crimes. Thus, even if Revels had not defaulted, he would not be entitled to relief on Ground 1(d).

### E. Ground 1(e)

In Ground 1(e), Revels argues that trial counsel was ineffective for failing to depose any witnesses, and as a result, "was ill prepared at trial to present a legitimate adversarial testing." Revels further argues that counsel "was aimless and allowed prosecution [sic] to have it's [sic] way with [her]." Respondent contends that depositions are not required and that trial counsel thoroughly and effectively cross-examined the state's witnesses.

Respondent also argues that Ground 1(e) is procedurally defaulted. Revels did not raise it in either his *pro se* or amended Rule 29.15 motions, and he has not offered any basis for cause and prejudice. As a result, he is not entitled to relief on this ground.

Alternatively, this claim fails on the merits. Counsel's impeachment of the prosecution's witnesses did not fall below the level of reasonableness. Specifically, the record shows that trial

---

[10] Revels argument suggests a theory that Polk, not Revels, was the perpetrator of the Wachowe robbery. Given the fact that Polk was driving a stolen vehicle in which the police allegedly found a weapon, it is likely that Polk would have asserted his privilege against self-incrimination under the Fifth Amendment had he been called to testify at Revels' trial.

counsel was reasonably well-prepared and effectively cross-examined Wachowe, Officer Vetter, Officer Ahlbrand, Wilson, and Robinson.

During her cross-examination of Wachowe, for example, counsel demonstrated great familiarity with the information he provided to the police officers and detectives about Revels' appearance and characteristics. Resp't Ex. A at 243-52. Counsel elicited that he described Revels as being between 5'7'' and 5'8," having a "scraggly beard" with no mustache, wearing a short-sleeved T-shirt, as having a light complexion, having worn blue jean shorts, and carrying a .32 caliber blue steel revolver. *Id.*

Counsel cross-examined Officer Vetter about the discrepancies between the description of Revels in the police report and Wachowe's description of him. *Id.* at 327-29. In doing so, she demonstrated her knowledge of the record.

Similarly, when cross-examining Officer Ahlbrand, counsel demonstrated ample knowledge of the record in attacking the makeup of both the photographic and physical line-ups. *Id.* at 32-39.

In cross-examining Wilson, counsel attempted to show that Wilson and Sykes lured Revels into their car with the promise of selling him marijuana they did not have. *Id.* at 362-63. She wanted to introduce a "Drug Deal Gone Bad" defense, which the court did not allow. *Id.* at 362-63.

Counsel examined Robinson at length about his plea deal with the State. *Id.* at 411-54. She had spent several hours listening to tapes of his testimony to prosecutors about his involvement in the incident. *Id.* at 412. She highlighted several inconsistent statements he made before and after the plea deal regarding his culpability in the incident. *Id.* at 412-54. She

demonstrated comprehensive knowledge of Robinson's oral statements to prosecutors, and she effectively impeached his testimony.

Counsel's knowledge of the record and her impeachment of the prosecution's witnesses did not fall below *Strickland*'s standard of reasonableness. Moreover, Revels has not demonstrated that the outcome of the trial would have been different had she deposed the witnesses before trial. Accordingly, even if Revels had not defaulted Ground 1(e), he would not be entitled to relief on this ground.

### F.      Ground 1(f)

In Ground 1(f), Revels argues that trial counsel was ineffective for failing to move for a continuance when co-defendant Cedric Robinson was announced as a surprise witness. Revels contends that introducing Robinson as a witness just before trial was a violation of *Brady v. Maryland*. *Brady* and its progeny require the timely disclosure of favorable evidence to the defense, including impeachment material. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419 (1995). As explained below, *Brady* does not apply in this situation.

More fundamentally, however, Respondent argues that Ground 1(f) is procedurally defaulted. Revels did not raise it in either his *pro se* or amended Rule 29.15 motions, and he has not offered any basis for cause and prejudice. As a result, Revels is not entitled to relief on Ground 1(f).

Responding to the merits, Respondent claims that the introduction of Robinson as a witness involves state discovery rules and is not cognizable in these proceedings. Respondent further claims that this issue does not involve exculpatory evidence, and therefore, *Brady* is not implicated. The record in this matter supports Respondent.

First, Respondent is correct that *Brady* is not implicated by a tardy disclosure of *inculpatory* information. In *Brady*, the Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The introduction of Robinson as a witness was not favorable to Revels. Moreover, Revels makes no credible allegation, and the Court finds no suggestion in the record, that the State failed to adequately disclose impeachment material relative to Robinson. To the contrary, the record suggests that the State disclosed the nature and extent of Robinson's cooperation as well as his prior inconsistent statements.

Further, there is no constitutional or federal law requirement that the prosecution reveal the identities of its witnesses before trial in a non-capital case. *See United States v. Hutchings*, 751 F.2d 230, 236 (8th Cir. 1984). Thus, any issue regarding the timeliness of the disclosure of Robinson's status as a witness would involve a non-cognizable issue of Missouri criminal law. More importantly, Revels was not prejudiced by his lawyer's failure to request a continuance. As stated above, during her cross-examination of Robinson, counsel demonstrated thorough knowledge of his statements relative to the charged crimes – both before and after his plea deal.[11] Counsel used Robinson's inconsistent statements, as well and the benefit Robinson received for from his plea agreement with the State, to thoroughly cross examine him and impeach him before the jury. Accordingly, Revels has failed to show his attorney's performance was constitutionally deficient or that that the outcome of the trial would have been different had she asked for a continuance.

---

[11] For example, the record shows that counsel spent considerable time reviewing Robinson's statements in preparation for cross-examination. *See, e.g.,* Resp't Ex. A at 412-13 (explaining that counsel took good notes, spent eight hours reviewing a tape of Robinson's statements, and was aware of changes in Robinson's version of events).

Revels is not entitled to relief on Ground 1(f).

## G.    Ground 1(g)

In Ground 1(g) of the petition, Revels argues that trial counsel was ineffective for failing to file a motion to dismiss improperly joined counts.  Respondent argues that this is an issue of state law and that the Court should defer to the state court's legal conclusions.[12]

As noted above regarding Ground 1(c) (failure to file a motion to sever counts), the record is abundantly clear that, had trial counsel moved to sever the counts, the trial court would have denied such a motion.  Resp't Ex. B at 165-75.  Furthermore, the Missouri Court of Appeals resolved Revels' severance/joinder issues pursuant to the application of Missouri law, and consistent with the trial court's statement to Revels during sentencing.  Thus, even if counsel had objected and preserved the joinder issue for direct appeal, Revels would still not prevail. Under Missouri law, joinder is proper if "where the charged offenses are: (1) of the same or similar character: (2) based on two or more connected acts or transactions; or (3) part of a common scheme or plan."  Resp't Ex. J at 6.

In denying relief on this claim, the Missouri Court of Appeals found the two incidents – the July 2, 2003, and the August 9, 2003, robberies – to be similar in character.

> In the instant case, both robberies occurred within the City of St. Louis and within approximately five weeks of each other.  Both robberies involved an African-American male perpetrator deceptively engaging male victims, before entering the victims' automobile with the victim(s) still inside.  Significantly, both robberies involved the unique demand by the perpetrator that his victims remove their pants.  These common facts sufficiently demonstrate that the Walgreens robbery and the gas station robbery were similar in character.

*Id.* at 7.

---

[12] Technically, ground 1(g) has been procedurally defaulted.  Revels' *pro se* and amended Rule 29.15 motions only raised an issue of *severance* due to misjoinder, not *dismissal* of improperly joined counts.  *See* Resp't Ex. G at 7, 9, 20.  The Court need not rely on default to resolve ground 1(g) because it would fail on the merits.

As already discussed above, "[i]n § 2254 proceedings, federal courts are limited to deciding whether a state conviction violated the federal Constitution or laws…. A federal court may not re-examine a state court's interpretation and application of state law." *Schleeper*, 36 F.3d at 737. The state court's decision was entirely grounded in state law. Revels has not demonstrated that Missouri law is in conflict with the Constitution or any other federal law.[13] This Court must defer to the Missouri Court of Appeals decision.

Revels cannot show that counsel was deficient for failing to file a hopeless motion to dismiss allegedly improperly joined counts. As such, he also cannot demonstrate that he was prejudiced. Therefore, he is not entitled to relief on Ground 1(g).

### H.      Ground 1(h)

In Ground 1(h), Revels argues that trial counsel was ineffective for failing to object to Cedric Robinson's testimony regarding the gun used in the August 9, 2003 events. (ECF No. 1-1 at 3)  To understand Ground 1(h), it is useful to also understand that Revels was arrested on August 11, 2003 (two days after the Sykes robbery) and found to be in possession of a .357 revolver.  Revels ultimately pled guilty to unlawful use of a weapon and carrying a concealed weapon (Count 17). *See* Resp't Ex. A at 6-7, 36. The substance of Revels' argument is that the State should not have been permitted to show the gun seized from him (and which he pled guilty to unlawfully possessing) to Robinson.  As explained below, the factual basis for Revels' argument is not supported by the record when viewed in context.

Prior to trial on the more serious charges, the prosecutor acknowledged that the State did not have "ballistics that match the gun that was seized [from Revels] with the shootings [on August 9, 2003]." *Id.* at 36-37.  At trial, Robinson was shown the .357 revolver seized from

---

[13] In fact, Missouri law is similar to the corresponding federal rule regarding joinder of offenses. *See* Fed. R. Crim. P. 8(a).

Revels (State's Exh. 24B). Robinson testified, in substance, that it was the same gun he saw Revels possess on August 9, 2003, in connection with the Sykes robbery. Robinson described the lack of a "thumb presser" on the weapon. *Id.* at 389-92. Revels also testified that, after the robbery and shooting on August 9, 2003, Revels removed and discarded the shells from the weapon, and replaced them with several .38 caliber cartridges given to him by Robinson. *Id.* at 389-90.

After Robinson testified, the State presented evidence and testimony from an expert firearms examiner – Officer David Menendez. Resp't Ex. B at 6-13. Officer Menendez testified that he examined the .357 revolver and six live .38 caliber cartridges with it. *Id.* at 9-10. Officer Menendez testified that a .357 caliber weapon can accept a .38 caliber cartridge. *Id.* at 12. Officer Menendez examined the weapon only to ensure that it fired and was functional. The record indicates that Officer Menendez did not conduct any ballistics tests on the weapon. *Id.* at 13-14.

Revels argues that his trial counsel should have objected to Robinson's testimony regarding the .357 revolver because Robinson's testimony was allegedly false. The gist of Revels' position is that, because there was no ballistics evidence linking the shootings to the revolver, Robinson's testimony must be false. Respondent contends that this ground is procedurally defaulted and, in any event, that allegedly false testimony is not a valid basis for an objection.

Revels did not raise this ground on appeal from the denial of his post-conviction motion. He has not alleged cause or prejudice to excuse any default. Therefore, Ground 1(h) is procedurally defaulted, and Revels is not entitled to relief.

Even assuming Revels could overcome his default, Ground 1(h) would fail on the merits for at least two reasons. First, Respondent is correct that allegedly false testimony, without more, is not a basis for a proper objection. *See Perry v. New Hampshire*, ---U.S.---, 132 S. Ct. 716, 723 (2012) ("The Constitution … protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit.").

Second, and more importantly, even if Ground 1(h) is liberally construed to state a proper claim for federal habeas review (e.g., counsel's failure to object to the foundation for Robinson's testimony), it would still fail because Revels' argument is unsupported by the record, when it is viewed in full context.

Robinson's testimony was that State's Exhibit 24B – a .357 caliber revolver – was the same as the gun that he observed Revels possess in connection with the August 9, 2003 robbery. Robinson described a specific characteristic of the gun – the lack of a "thumb presser." Robinson also testified that, after the robbery, Revels discarded the shells that were in the revolver and replaced them with .38 caliber shells. Officer Menendez testified that State's Exhibit 24B (the revolver) was recovered with six .38 caliber shells, thus corroborating, at least in part, Robinson's testimony.[14] Furthermore, although there was no ballistics evidence that matched the .357 revolver to the shooting on August 9, 2003, there was also no ballistics evidence excluding that revolver from the shooting. Officer Menendez's analysis was limited to

---

[14] There is no dispute that the State's theory was that Revels' robberies were a signature type of crime (e.g., demanding that victims remove their pants). In this regard, even absent expert ballistics evidence affirmatively linking the seized handgun to the events of August 9, 2003, the gun and Robinson's testimony would have been admissible as evidence of the same type of gun Revels in fact possessed, which was loaded with the same type of ammunition that Revels was last known to have used.

verifying that the firearm was operational. Furthermore, before Robinson or Officer Menendez testified, all three victims testified and indicated that Revels robbed them at gunpoint. Victims Sykes and Wilson specifically identified the weapon as a .357.

Thus, Revels cannot show that Robinson's testimony was demonstrably false or that his counsel could have taken more steps to limit Robinson's testimony as to what he observed on August 9, 2003. Thus, Revels cannot show any *Strickland* deficiency or prejudice due to counsel's failure to object to Robinson's testimony regarding State's Exhibit 24B. As a result, even if Revels had not defaulted Ground 1(h), he would not be entitled to relief on the basis of a claim that Robinson allegedly testified falsely regarding the .357 caliber revolver.

### I.      Ground 1(i)

In Ground 1(i), Revels argues that appellate counsel was ineffective for failing to raise the issues he instructed her to raise on direct appeal. Revels claims that he instructed direct appeal counsel to raise claims of ineffective assistance of counsel regarding allegedly perjured testimony (Ground 1(h)), lack of *Brady* material concerning surprise witnesses (Ground 1(f)), and for failing to move for a continuance to prepare for surprise witnesses (Ground 1(f)). Revels further argues that counsel should also have raised trial court error claims regarding vindictiveness in sentencing (Ground 4), the issue of severance (Ground 1(c)), the suppression of line-up identification (Ground 1(b)), actual innocence (Ground 3), and prosecutorial misconduct (Ground 2).

Revels did not raise any claim of ineffective assistance of appellate counsel in his *pro se* or amended Rule 29.15 motions. Accordingly, it has been procedurally defaulted. To overcome his default, Revels appears to rely on *Martinez* (discussed above). *Martinez*, however, could not save this ground because none of the matters complained of are substantial. Stated differently,

appellate counsel was not ineffective because Revels' claims are meritless and, therefore, he was not prejudiced by counsel's failure to raise such claims.

First, as Respondent correctly points out, counsel was not ineffective for failing to raise grounds of ineffective assistance of counsel on direct appeal because those claims are properly brought in a Rule 29.15 motion. *See* Mo. Ct. R. 29.15(a); *Missouri v. Leivan*, 103 S.W.3d 425, 427-28 (Mo. Ct. App. 2003). Second, as to Revels' claims of prosecutorial misconduct and actual innocence, as is discussed below, those claims are not substantial under the *Martinez* standard. Hence, appellate counsel was not ineffective for failing to raise them on appeal. Third, Revels' claims of trial court error rest on the same bases as his ineffective assistance of counsel claims discussed above. The Court has found that none of those claims would entitle him to federal habeas relief.

Finally, Revels also claims that he directed appellate counsel to raise a ground based on judicial vindictiveness in sentencing. This argument is substantially similar to the argument Revels advances independently herein as Ground 4. Revels contends that the trial judge gave him a longer sentence because he told the judge that his counsel did not adequately represent his interests at trial. In his affidavit, Revels contends –

> [T]he trial judge specifically stated, "I was prepared to give you a 20-year sentence as the state gave my codefendant Cedric Robinson but scratch that now I'm giving you 30 years especially since one of your victims is strickened [sic] to a wheelchair as the result of you and you are very ungrateful by complaining about you [sic] attorney's representation when she was actually fighting for you and did the best she could."

Pet'r Aff. at 2.

Revels does not cite to any support in the record for his argument. The record from Revels' sentencing hearing does not include any suggestion that the trial judge made any statements even remotely resembling the remarks suggested in Revels' affidavit. *See* Resp't Ex.

B at 156-75.  Rather, during the sentencing hearing, Revels claimed that counsel did not properly

investigate his case.  *Id.* at 170-73.  In response to all of Revels' complaints, the court stated:

> Following examination of defendant pursuant to Rule 29.07(b)(4) of the Missouri
> Rules of Criminal Procedure, the Court finds that defendant has been advised of
> his right to proceed under Rule 29.15 and understands this right and that
> defendant has been represented at all critical stages in this case by [counsel] who
> investigated this case, advised defendant concerning all significant aspects, kept
> the defendant informed of the State's recommendation, prepared defendant for
> trial and tried this case in a reasonably competent and professional manner; that
> there is no probable cause to believe defendant received ineffective assistance of
> counsel.

*Id.* at 174-75.  This statement stands in stark contrast to that offered by Revels.

Revels is not entitled to relief due to the alleged ineffective assistance of appellate

counsel, as alleged in Ground 1(i).

### J.      Ground 1(j)

In Ground 1(j), Revels argues that post-conviction counsel was ineffective for failing to

raise, in the amended Rule 29.15 motion, all of the claims that Revels raised in his *pro se* motion.

Specifically, Revels contends that he instructed post-conviction counsel to raise an "actual

innocence" claim based on his allegation that the prosecution introduced the wrong gun at trial,

as well as a claim of ineffective assistance of counsel for allowing Robinson's "surprise"

testimony to be introduced at trial.  Respondent argues that Revels is not entitled to relief on this

ground because it raises an independent claim of ineffective assistance of post-conviction

counsel, which is impermissible under § 2254(i).

Section 2254(i) states, "[t]he ineffectiveness or incompetence of counsel during Federal

or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding

arising under section 2254."  It appears that Respondent is correct in that Revels is attempting to

bring an independent claim of ineffective assistance of counsel.  Thus, Revels is not entitled to

relief to the extent Ground 1(j) raises an independent claim of ineffective assistance of post-conviction counsel.

Alternatively, and liberally construing his petition, Revels may be attempting to argue that the ineffective assistance of his post-conviction counsel cures the procedural default of the grounds he failed to raise and exhaust in state court. As discussed above, the Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. 1309, 1320 (2012). Therefore, the default may be excused if any of the eliminated grounds of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318.

None of the omitted claims has any merit. Whether the evidence introduced at trial was sufficient to support the verdict does not show actual innocence. It merely goes to the weight of the evidence. Likewise, the Court has already found that Robinson's "surprise" testimony does not give rise to relief. Finally, the Court has addressed, even if briefly, the merits of every claim of ineffective assistance of counsel raised herein and found each such claim to fall short of meeting the deferential standard under *Strickland*.

As a matter of law, Revels is not entitled to relief on any of his claims of ineffective assistance of post-conviction counsel, as actually raised or as liberally construed herein.

## II.     Prosecutorial Misconduct Claims

As part of his second ground, Revels alleges seven incidents of what he characterizes as prosecutorial misconduct. Prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render a petitioner's conviction a

denial of due process. *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998). To obtain habeas relief, "[a] petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir.1995)).

## A.  Grounds 2(a)-2(c)

Grounds 2(a)-(c) are essentially duplicative of grounds 1(b), 1(f), and 1(h). Ground 2(a) alleges a failure to disclose *Brady* material relative to "surprise witness" Cedric Robinson. This ground fails for substantially the same reasons that Ground 1(f) fails. Ground 2(b) alleges that the prosecution suborned the perjured testimony of Robinson relative to the .357 revolver. That matter was thoroughly considered and rejected in considering Ground 1(h). Ground 2(c) contends that the prosecution knowingly relied upon unreliable identification procedures. This ground was addressed above as part of Ground 1(b). Inasmuch as Grounds 2(a)-2(c) merely restate Revels' ineffective of assistance clams as prosecutorial misconduct claims, Revels is not entitled to relief on any of these grounds for at least the same reasons discussed above. The Court addresses the remainder of Revels purported prosecutorial misconduct claims below.

## B.  Ground 2(d)

Ground 2(d) claims that the prosecution engaged in "multiplicity/duplicity when it stacked several charges against" Revels. ECF No. 1-1 at 5; Revels' Memorandum in Support of his Petition. Revels contends that the

> Prosecution violated his Due Process Rights by breaking one crime into four, thus confusing the jury into believing [Revels] was/is a straight up menace to society [whose] alleged modus operandi is to strip victims of their pants. Prosecution relied upon a half baked story by Robinson whereas he claimed [Revels'] M.O. was to rob victims of their pants, when in actuality it was a drug deal gone bad as [Revels], Maurice Wilson, and Norman Sykes tussled over the gun, when Wilson

was shot in his buttocks and on his own accord, took off his shorts and ran. Therefore, [Revels] shouldn't have been charged with Robbery nor should the prosecution have allowed Robinson to testify to this.

*Id.*

Revels' argument does not identify any meaningful claim of prosecutorial misconduct. To the extent this argument reflects a claim of improper joinder of counts, the Missouri Court of Appeals sufficiently addressed that issue, as noted above in reference to Ground 1(c) and 1(g). To the extent it raises a sufficiency of the evidence argument, that is addressed in Ground 2(g) below.[15]

To the extent Ground 2(d) raises an issue other than joinder/severance or the sufficiency of the evidence, it has been procedurally defaulted. Thus, to the extent Revels argument in this Court claims the indictment against him was duplicitous or multiplicitous, those arguments have been defaulted – no such claim was raised on direct appeal or in Revels' 29.15 motion.

Even if Revels could cure his default, any duplicity or multiplicity claim would fail on the merits. Duplicity occurs when the State charges a defendant with two or more distinct crimes in a single count. *See, e.g., United States v. Nattier*, 127 F.3d 655, 657 (8th Cir. 1997). Revels has not shown how any count was duplicitous. Multiplicity occurs when an indictment charges a single offense in multiple counts. *See, e.g., United States v. Worthon*, 315 F.3d 980, 983 (8th

---

[15] Moreover, in reviewing Revels' sufficiency of the evidence arguments on direct appeal, the Missouri Court of Appeals rejected the argument that the State had "overreached by 'piling on' multiple charges." Resp't Ex. F at 7-8. In so doing, the Missouri Court of Appeals applied state law to resolve the claim. *Id.* Nothing suggests that Missouri law in this regard is unconstitutional. Thus, an argument premised on "piling on" would not be cognizable on federal habeas review.

Cir. 200 (citation omitted). Revels has not offered any meaningful claim that any group of counts in the indictment were unconstitutionally multiplicitous.[16]

Accordingly, Revels is not entitled to relief on Ground 2(f).

## C.       Ground 2(e)

In Ground 2(e), Revels argues that the prosecutor committed misconduct by allowing Officer Ahlbrand to give his opinion regarding whether a person caught driving a stolen car is necessarily the same person who stole the car. Revels claims that the testimony was prejudicial and prevented him from claiming that Shelby Polk was the actual perpetrator of the July 2, 2003, incident. Respondent argues that whether such evidence is admissible is a question of state law.

Although Revels placed his argument is Ground 2(e) under the category of prosecutorial misconduct, it is more accurately characterized as a claim of trial court error. A prosecutor does not necessarily commit misconduct by eliciting opinion testimony from a lay witness. It is left to defense counsel to object to a potentially improper question and for the trial court to rule the objection.

Revels raised a substantially similar argument in his direct appeal. In particular, Revels argued that "allow[ing] Officer Ahlbrand to speculate as to whether and why stolen cars may be found in the possession of someone other than the robber [] was improper opinion testimony by a lay witness." Resp't Ex. F at 8. The appellate court noted that Revels had not preserved "his

_____

[16] To his credit, Respondent has parsed Ground 2(d) and noted that Revels was convicted of robbery and armed criminal action relative to the theft of the Grand Cherokee possessed by Sykes and Wilson (Counts 5 and 6), as well as robbery and armed criminal action relative to the theft of Sykes pants (Counts 7 and 8). *See* Resp't Resp. at 44-45 (ECF No. 13). The Court is not persuaded that charging Revels with two distinct robberies, on these facts and pursuant to Missouri law, raises a constitutional double jeopardy concern that would have merited consideration either on direct appeal or as part of a Rule 29.15 motion.

claim that the testimony was improper opinion of a lay witness," and it reviewed that claim for plain error. *Id.* at 9. The court found that Revels

> mischaracterize[d] Officer Ahlbrand's testimony. Ahlbrand was not asked to speculate or offer an opinion as to why Polk was driving Wachowe's stolen car. The questions asked of Officer Ahlbrand were intended to elicit his observations from twenty-one years of law enforcement experience as to why a car stolen by one person would be recovered in the possession of another person.

*Id.* at 10.

Until recently, there was uncertainty whether a state court's plain error review of a defaulted claim cured or otherwise remedied a procedural default for federal habeas purposes. The Eighth Circuit has now made clear that a state court's plain error review of an unpreserved or waived claim does not serve to excuse a procedural default. *See Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015) (resolving intra-circuit split).

In Revels' case, the Missouri Court of Appeals concluded that he failed to preserve any claim of error relative to Officer Ahlbrand's alleged improper lay opinion. Thus, it appears that Revels defaulted Ground 2(e). Under *Bertsch*, the fact that the Missouri Court of Appeals reviewed Revels' arguments for plain error does not cure the default. Accordingly, Revels' Ground 2(e) is procedurally defaulted.

Even if Revels had not defaulted this ground, it would still fail. Whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited habeas jurisdiction. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir.1996).

As noted by the Missouri Court of Appeals, Officer Ahlbrand's testimony was drawn from twenty-one years of law enforcement experience. Moreover, Officer Ahlbrand's testimony was not the only testimony at trial explaining why someone other than the original car thief may later end up driving the stolen vehicle. For example, Cedric Robinson testified that he swapped stolen cars with other persons. *See* Resp't Ex. A at 430, 460.

Thus, even if Revels had not defaulted Ground 2(e), Officer Ahlbrand's testimony did not deprive Revels of due process, as he has failed to demonstrate that a manifest injustice occurred. The decision of the state court was not contrary to, or an unreasonable application of, clearly established federal law. Moreover, Officer Ahlbrand's testimony was not the only testimony regarding swapping stolen vehicles. As a result, Revels is not entitled to federal habeas relief on Ground 2(e).

### D.      Ground 2(f)

In Ground 2(f), Revels argues that the prosecutor committed misconduct by presenting contradictory theories of guilt during pretrial discussions and at trial. In particular, Revels contends that the prosecution presented conflicting theories regarding the .357 revolver he pled guilty to possessing illegally, and the gun used in the robberies. Respondent claims that Revels' claim is contradicted by the record. Having reviewed the record in detail, the Court concludes that Respondent is correct.

Revels' argument rests on the prosecutor's pretrial acknowledgement that the State had not used ballistics evidence to connect the .357 revolver seized from Revels to the robbery and shooting on August 9, 2003. There is no indication, however, that there was ballistics evidence showing that the .357 revolver was <u>not</u> used in the robbery. Rather, there was simply no ballistics evidence at all. As discussed above in reference to Ground 1(h), the State connected

the .357 revolver (State's Exhibit 24B) seized from Revels to the gun used in the August 9th robbery through the testimony of Cedric Robinson, as corroborated in part by Officer Menendez and other victim witnesses who testified that Revels robbed them using a .357 gun. Therefore, Revels has not shown any contradictory theory or improper prosecutorial conduct relative to the .357 revolver. The prosecutor's position was consistent from the pretrial hearing (no ballistics evidence), through opening statement, and through testimony of victims Sykes and Wilson, cooperating witness Robinson, and expert testimony of Officer Menendez. Therefore, Revels is not entitled to relief on Ground 2(f).

### E.    Ground 2(g)

In Ground 2(g), Revels argues that the prosecutor committed misconduct by failing to introduce sufficient evidence to support the verdict. Respondent contends that the Missouri Court of Appeals' finding that the evidence was sufficient to support the verdict was not unreasonable or contrary to clearly established federal law.

In reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this, the scope of review is extremely limited. *See Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015) (describing *Jackson* as a "narrow standard"). The Court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the Court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).

On direct appeal, Revels argued that the evidence was insufficient to support the convictions for first-degree robbery and armed criminal action for forcibly stealing Sykes's pants

– Counts 7 and 8. Resp't Ex. F at 5.[17] The appellate court applied the correct standard and found the evidence to be sufficient. Specifically, the court recited Sykes's testimony and found that the "evidence that Sykes handed his pants over to [Revels] is sufficient to show that [Revels] appropriated Sykes pants [sic] and a taking occurred." *Id.* at 7. Sykes's testimony that Revels took his pants at gunpoint was sufficient for a reasonable juror to find that Revels robbed Sykes.

Revels is not entitled to relief on Ground 2(g).

## III.    Actual Innocence – Ground 3

In Ground 3, Revels argues that he is actually innocent because the prosecution did not present any ballistic evidence regarding the .357 revolver. Ground 3 is another form of the same arguments the Court rejected in the context of Revels' ineffective assistance of counsel and prosecutorial misconduct grounds – Grounds 1(H), 2(b), and 2(f). For similar reasons, Revels would not be entitled to relief on Ground 3. For clarity, however, the Court will address Revels' "actual innocence" ground.

The term "actual innocence" can have different meanings in the federal habeas context. "Actual innocence" can refer to either a "gateway claim" or a "freestanding claim." *See Nash*, 807 F.3d at 898-99. A gateway claim of actual innocence refers to a means by which a prisoner can obtain federal review of a procedurally defaulted claim. *Id.* "To obtain review of an otherwise procedurally barred claim, a petitioner must satisfy a two-part test: (1) the 'allegations of constitutional error must be supported with new reliable evidence not available at trial'; and (2) 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* at 899 (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). The Eighth Circuit has "defined 'new

---

[17]    To the extent Revels seeks federal habeas review on a broader basis than his direct appeal, Ground 2(g) is defaulted.

evidence' as evidence that 'was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" *Id.* (quoting *Amrine*, 238 F.3d at 1028).

In Revels' case, he has not identified any new evidence that was not available to him at trial. Thus, he has not established a gateway claim of actual innocence that would cure any procedural default. Moreover, Revels' argument rests on a notion that the only evidence linking him to the crimes was the .357 revolver seized from him and identified by cooperating witness Robinson. That is not correct. As noted repeatedly herein, all three victims positively identified Revels as the person who robbed him at gunpoint. Multiple witnesses identified the weapon as a .357 model. Thus, even if the gun seized from Revels after the robberies was not the exact same weapon as the one he used in the August 9th robbery, he cannot meet his burden of showing that no reasonable juror would have convicted him if Robinson's testimony regarding the gun had been more limited.

Finally, the Court has addressed, even if briefly, the substance of Revels' defaulted grounds and found each of those grounds lacking in merit. Therefore, even if Revels had made a gateway claim of actual innocence, he would still not be entitled to relief on any of his procedurally defaulted grounds.

The Court will also consider Ground 3 as an attempt to raise a "freestanding claim" of actual innocence. A freestanding claim of actual innocence is one that is not limited to curing a procedural default. It is not entirely clear whether such a claim may form the basis of federal habeas relief (at least in a non-capital context). Rather, "[t]he Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error." *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (citing *House v. Bell*, 547 U.S. 518, 554-55 (2006)). What is clear,

however, is "that if the Supreme Court were to grant relief on this type of claim, 'the threshold … would be extraordinarily high [and] would require more convincing proof than the gateway standard.'" *Nash*, 807 F.3d at 899 (quoting *Dansby*, 766 F.3d at 816). Because Revels cannot meet the gateway standard of actual innocence, he certainly cannot satisfy any possible freestanding standard that might be applied to his case.

Revels is not entitled to relief on Ground 3.

## IV.  Vindictive Sentencing – Ground 4

For Ground 4, Revels argues, as he does in Ground 1(i), that the trial court sentenced him "out of the spirit of vindictiveness" because Revels said during sentencing that he thought his counsel was ineffective. Like Ground 1(i), Ground 4 is refuted by the record. No further discussion is required. Therefore, Revels is not entitled to relief on Ground 4.

### Conclusion

The Court concludes that Revels is not entitled to federal Habeas relief on any of the grounds presented in his Petition. Revels has procedurally defaulted most of his claims and has not alleged any lawful excuse for such defaults. As for the grounds Revels has properly exhausted and presented for federal review, he has not satisfied his burden of showing that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or was based upon an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d).

Moreover, an evidentiary hearing is not warranted because the existing "record already contains all the facts necessary to resolve [Revels'] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1060 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

Finally, Revels has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the petition for writ of habeas corpus is **DENIED**, and this action is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

A separate Judgment will be issued forthwith.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of February, 2016